UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

LORI WHISMAN, JOANNE
ALLEN and SHARON PESKETT,
*individually, and on behalf of other
similarly situated individuals*,

   Plaintiffs,        CLASS ACTION

v.              JURY TRIAL DEMANDED

DESIGNER BRANDS INC., *an Ohio
corporation*,

   Defendant.
_____/

### CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FAIR AND ACCURATE CREDIT TRANSACTIONS ACT (FACTA)

Plaintiffs, Lori Whisman, Joanne Allen, and Sharon Peskett ("Plaintiffs"), on behalf of themselves and other similarly situated individuals, sue Defendant, Designer Brands Inc., ("Defendant"), and allege the following upon information and belief, and their own personal knowledge:

#### I.  NATURE OF THE CASE

1.  This action arises from Defendant's violation of the Fair and Accurate Credit Transactions Act ("FACTA") amendment to the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*., ("FCRA"), which requires persons that accept debit cards or credit cards for the transaction of business to truncate certain card number account information on printed receipts provided to consumers. Despite the clear language of the statute, Defendant knowingly or recklessly failed to comply with FCRA by printing the first six (6) and last four (4) digits of credit and debit card account numbers on point-of-sale

1

transaction receipts. As a result of Defendant's unlawful conduct, Plaintiffs and the Class

who conducted business with Defendant during the time frame relevant to this action have

suffered a violation of their substantive rights under § 1681c(g), an invasion of their

privacy, breach of their confidence in the safe handling of their account information, breach

of implied bailment, exposure to an elevated risk of identity theft, and were unfairly

burdened with the need to keep or destroy the receipt, so as to prevent further disclosure of

their sensitive credit or debit card information.[1] Accordingly, Plaintiffs and the Class are

entitled to an award of statutory damages and other relief as further detailed herein.

## II.   JURISDICTION AND VENUE

2.      This Court has jurisdiction under 15 U.S.C. § 1681p and 28 U.S.C. § 1331,

because the claims in this action arise from the violation of a federal statute.

3.      Venue is proper in this District under 28 U.S.C. § 1391 because a substantial

part of the events or omissions giving rise to the claim occurred here. Defendant does

business in this District, and its contacts here are sufficient to subject it to personal

jurisdiction.

## III.   PARTIES

4.      Plaintiff Lori Whisman is a natural person who, at all times relevant to this

action, was and is a citizen of the state of Florida, whose domicile is in Miami, Florida.

5.      Plaintiff Joanne Allen is a natural person who, at all times relevant to this

---

[1] Recently, the Eleventh Circuit Court of Appeals held that producing transaction receipts that fail to truncate all but the last five digits of a credit or debit card number causes consumers to incur multiple concrete harms. *See Muransky v. Godiva Chocolatier, Inc.*, No. 16-16486 (11th Cir. Apr. 22, 2019); *see also Lawrence v. South Florida Racing Association, LLC*, No. 1:18-cv-24264-UU (S.D. Fla. Jan. 14, 2019); *Rehman v. Dania Entertainment Center, LLC*, No. 0:18-cv-62481-DPG (S.D. Fla. Apr. 9, 2019).

action, was and is a citizen of the state of South Carolina, whose domicile is in Columbia, South Carolina.

6.      Plaintiff Sharon Peskett is a natural person who, at all times relevant to this action, was and is a citizen of the state of California, whose domicile is in La Crescenta, California.

7.      Defendant, Designer Brands Inc., is an Ohio corporation whose principal address is 810 DSW Drive, Columbus, Ohio 43219, and whose registered agent for service of process is Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.

8.      Defendant was also previously known as DSW, which is Defendant's flagship retail brand whose retail stores offer footwear, handbags, and other accessories. DSW operates nearly 550 stores in the United States and Canada.[2]

9.      Defendant conducts business in the state of Florida as the principal owner and operator of DSW.

## IV.     FACTUAL ALLEGATIONS

### A.      Background of FACTA

10.     Identity theft is a serious issue affecting both consumers and businesses. As of 2018, a Harris Poll revealed that nearly 60 million Americans have been affected by identity theft.[3] There were a record high 16.7 million victims of identity fraud in 2017 alone, and account takeovers (when a thief opens a credit card account or other financial

---

[2] Source:  http://designerbrands.com (Last viewed: September 12, 2019).
[3]  Source:https://www.lifelock.com/learn-identity-theft-resources-how-common-is-identity-theft.html (Last viewed: September 12, 2019).

account using a victim's name and other stolen information) tripled in 2017 from 2016, causing $5.1 billion in losses.[4]

11.     The states with the highest per capita rates of reported fraud in 2018 were Florida, Georgia, Nevada, Delaware, and Maryland. For reported identity theft, the top states in 2018 were Georgia, Nevada, California, Florida, and Texas.[5]

12.     Congress enacted FACTA to prevent identity theft and related harm. *See* Pub. L. No. 108-159 (Dec. 4, 2003) ("An Act . . . to prevent identity theft . . . and for other purposes.")

13.     Upon signing FACTA into law, President George W. Bush remarked, "Slips of paper that most people throw away should not hold the key to their savings and financial secrets." 39 Weekly Comp. Pres. Doc. 1746, 1757 (Dec. 4, 2003). President Bush added that the government, through FACTA, was "act[ing] to protect individual privacy." *Id.*

14.     One such FACTA provision was specifically designed to thwart identity thieves' ability to gain sensitive information regarding a consumer's credit or bank account from a receipt provided to the consumer during a point of sale transaction, which, through any number of ways, could fall into the hands of someone other than the consumer.

15.     Codified at 15 U.S.C. § 1681c(g), this provision states the following:

> ***Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.***

---

[4]     Source:     https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime (Last viewed: September 12, 2019).
[5]   Source:  https://www.ftc.gov/system/files/documents/reports/consumer-sentinel-network-data-book-2018/consumer_sentinel_network_data_book_2018_0.pdf (Last viewed: September 12, 2019).

15 U.S.C. § 1681c(g) (the "Receipt Provision").

16.     After the enactment of FACTA, Congress provided three (3) years in which to comply with the statute's requirements, mandating full compliance with its provisions no later than December 4, 2006.

17.     The requirement was widely publicized among retailers and the FTC. For example, on March 6, 2003, in response to earlier state legislation enacting similar truncation requirements, then-CEO of Visa USA, Carl Pascarella, explained, "Today, I am proud to announce an additional measure to combat identity theft and protect consumers. Our new receipt truncation policy will soon limit cardholder information on receipts to the last four digits of their credit or debit card numbers. The card's expiration date will be eliminated from receipts altogether . . . The first phase of this new policy goes into effect July 1, 2003 for all new terminals."[6] Within 24 hours, MasterCard and American Express announced they were imposing similar requirements.

18.     Card-issuing organizations proceeded to require compliance with FACTA by contract, in advance of FACTA's mandatory compliance date. For example, the publication, "Rules for Visa Merchants," which is distributed to and binding upon all merchants that accept Visa cards, expressly requires that "only the last four digits of an account number should be printed on the customer's copy of the receipt" and "the expiration date should not appear at all."[7]

---

[6] *Visa USA Announces Account Truncation Initiative to Protect Consumers from ID Theft*, PR NEWSWIRE (Mar 06, 2003) https://www.finextra.com/newsarticle/8206/visa-to-hide-card-numbers-in-bid-to-cut-identity- (Last viewed: September 12, 2019).

[7]     *Rules for Visa Merchants*, VISA (Sept. 1, 2007), http://www.runtogold.com/images/rules_for_visa_merchants.pdf (Last viewed: September 12, 2019).

19.     Accordingly, card processing companies continued to alert their merchant

clients, including Defendant, of FACTA's requirements. According to a Visa Best Practice

Alert in 2010:

> Some countries already have laws mandating PAN truncation and
> the suppression of expiration dates on cardholder receipts. For
> example, the United States Fair and Accurate Credit Transactions
> Act (FACTA) of 2006 prohibits merchants from printing more than
> the last five digits of the PAN or the card expiration date on any
> cardholder            receipt.           (Please            visit
> http://www.ftc.gov/os/statutes/fcrajump.shtm for more information
> on the FACTA.) To reinforce its commitment to protecting
> consumers, merchants, and the overall payment system, Visa is
> pursuing a global security objective that will enable merchants to
> eliminate the storage of full PAN and expiration date information
> from their payment systems when not needed for specific business
> reasons. To ensure consistency in PAN truncation methods, Visa has
> developed a list of best practices to be used until any new global
> rules go into effect.

*See* Exhibit A, Visa Best Practices Alert.

20.     As noted above, the processing companies have required that credit card or

debit card expiration dates not be shown since 2003 and still require it. For example,

American Express requires:

> Pursuant to Applicable Law, truncate the Card Number and do not
> print the Card's Expiration Date on the copies of Charge Records
> delivered to Card Members. Truncated Card Number digits must be
> masked with replacement characters such as "x," "*," or "#," and
> not blank spaces or numbers.

*See* Exhibit B, American Express Merchant Requirements.

21.     Similarly, MasterCard required in a section titled Primary Account Number

(PAN) truncation and Expiration Date Omission:

> A Transaction receipt generated by an electronic POI Terminal, whether
> attended or unattended, must not include the Card expiration date. In
> addition, a Transaction receipt generated for a Cardholder by an electronic
> POI Terminal, whether attended or unattended, must reflect only the last

6

four digits of the primary account number (PAN). All preceding digits of the PAN must be replaced with fill characters, such as "X," "*," or "#," that are neither blank spaces nor numeric characters.

*See* Exhibit C, MasterCard Acceptance Procedures.

22.     According to data from the Federal Trade Commission's 2017 Consumer Sentinel Network Data Book, Florida with its 208,443 complaints ranks No. 1 for the highest per capita rate of reported fraud and other types of complaints.[8]  For identity theft, Florida is ranked No. 2 in the country with a total of 31,167 complaints, with total losses from fraud estimated at $54.7M.[9]  Also, some of the top metro areas for identity theft are in Florida, according to the report.  First is the Cape-Coral-Ft. Myers area with 781.0 complaints per 100,000 people, and the Miami-Dade area counts 743.0 complaints per 100,000 people.[10]

23.     So problematic is the crime of identity theft that the three main credit reporting agencies, Experian, Equifax, and Transunion, joined to set-up a free website (http://www.annualcreditreport.com) in order to comply with FACTA requirements and to provide the citizens of this country with a means of monitoring their credit reports for possible identity theft.

24.     FACTA clearly prohibits the printing of more than the last five (5) digits of the card number to protect persons from identity theft. Indeed, Defendant's failure to comply with Section 1681c(g)(1)'s truncation provision constitutes a per se concrete

---

[8] Source: https://www.ftc.gov/policy/reports/policy-reports/commission-staff-reports/consumer-sentinel-network-data-book-2017/main (Last viewed: September 12, 2019).

[9]     Source:     https://www.ftc.gov/policy/reports/policy-reports/commission-staff-reports/consumer-sentinel-network-data-book-2017/state-rankings-id-theft-reports (Last viewed: September 12, 2019).

[10] *Id.*

injury. *See In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 637-38 (3d Cir. 2017) (recognizing that "'unauthorized disclosures of information' have long been seen as injurious" and rejecting the argument that *Spokeo* "creat[ed] a requirement that a plaintiff show a statutory violation has caused a 'material risk of harm' before he can bring suit") (citations omitted).

25.    Computer scientists have demonstrated that "even starting with no details at all other than the first six digits [of a card number] a hacker can obtain the three essential pieces of information to make an online purchase within as little as six seconds."[11] Starting with nothing more than the first six digits of a card number and "[b]y automatically and systematically generating different variations of the cards security data and firing it at multiple websites, within seconds hackers are able to get a 'hit' and verify all the necessary security data." *Id.* "Investigators believe this guessing attack method is likely to have been used in the recent Tesco cyberattack which defrauded customers of £2.5m." *Id.*

26.    In the present case, Defendant makes it easier for identity thieves to defraud consumers by printing point-of-sale transaction receipts that contain the first six (6) digits and last four (4) digits of credit or debit card account numbers.

**B.      Defendant's Prior Knowledge of FACTA**

27.    Most of Defendant's business peers and competitors currently and diligently ensure their credit card and debit card receipt printing process remains in

---

[11]   Source: Six Seconds to Hack a Credit Card (Dec. 2, 2016) https://www.ncl.ac.uk/press/articles/archive/2016/12/cyberattack/ (Last viewed September 12, 2019).

compliance with FACTA by consistently verifying their card machines and devices comply with the truncation requirement. Defendant could have readily done the same.

28.    In addition to being informed not to print more than the last five (5) digits of credit or debit card account numbers, Defendant was contractually prohibited from doing so. Defendant accepts credit cards and debit cards from all major issuers (*i.e. VISA, MasterCard, American Express*). As discussed, *supra*, these companies set forth requirements that merchants, including Defendant, must follow, including FACTA's redaction and truncation requirements.

29.    Moreover, Defendant has been sued in past for violating the Fair Credit Reporting Act ("FCRA") *See Gunther v. DSW Inc.*, No. 15-C-1461, 2016 WL 6537975, at *1 (E.D. Wis. Nov. 3, 2016) (complaint for violation of 15 U.S.C. § 1681b(b)(2)(A)).

30.    Defendant had also been sued in the past for improperly storing the financial information of its customers that were misappropriated through a data breach into Defendant's system. *Key v. DSW, Inc.*, 454 F. Supp. 2d 684, 685–86 (S.D. Ohio 2006) ("Because of DSW's alleged improper retention and failure to secure this information, on or about March 2005 unauthorized persons obtained access to and acquired the information of approximately 96,000 customers.").

31.    In other words, Defendant is not new to the provisions of the FCRA and the risk of identity theft having been previously sued twice for privacy violations similar to the one at issue in this case.

C.    **Plaintiffs' Factual Allegations**

32.    On September 4, 2019, Plaintiff Lori Whisman made a purchase using her personal debit card at a store owned and operated by Defendant, located in Miami, Florida.

33.     Plaintiff Lori Whisman was subsequently provided an electronically printed receipt bearing the first six (6) and last four (4) digits of her debit card account number (for a total of ten (10) digits).

34.     In addition, the receipt provided by Defendant includes the full name of Plaintiff and additional information related to the VIP customers rewards program, such as Plaintiff's customer ID number, all of which expose Plaintiff to an increased risk of identity theft when combined with the ten digits of the debit card account printed on the receipt.

35.     As a direct result of Defendant's printing the first six (6) digits of her debit card account number in addition to the last four (4), Plaintiff Lori Whisman was compelled to take action to safeguard the receipt.

36.     The unlawful printing of Plaintiff Lori Whisman's first six (6) digits of her debit card account number invaded her privacy by disclosing her private financial information to anyone who might come in contact with the receipt.

37.     Defendant's disclosure of the first six (6) digits of Plaintiff Lori Whisman's debit card account number breached her confidence in the proper handling of her sensitive debit card account information.

38.     On August 28, 2019, Plaintiff Sharon Peskett made a purchase using her personal debit card at a store owned and operated by Defendant, located in Pasadena, California.

39.     Plaintiff Sharon Peskett was subsequently provided an electronically printed receipt bearing the first six (6) and last four (4) digits of her debit card account number (for a total of ten (10) digits).

40.     In addition, the receipt provided by Defendant includes the full name of Plaintiff and additional information related to the VIP customers rewards program, such as Plaintiff's customer ID number, all of which expose Plaintiff to an increased risk of identity theft when combined with the ten digits of the debit card account printed on the receipt.

41.     As a direct result of Defendant's printing the first six (6) digits of her debit card account number in addition to the last four (4), Plaintiff Sharon Peskett was compelled to take action to safeguard the receipt.

42.     The unlawful printing of Plaintiff Sharon Peskett's first six (6) digits of her debit card account number invaded her privacy by disclosing her private financial information to anyone who might come in contact with the receipt.

43.     Defendant's disclosure of the first six (6) digits of Plaintiff Sharon Peskett's debit card account number breached her confidence in the proper handling of her sensitive debit card account information.

44.     On September 12, 2019, Plaintiff Joanne Allen made a purchase using her personal debit card at a store owned and operated by Defendant, located in Columbia, South Carolina.

45.     Plaintiff Joanne Allen was subsequently provided an electronically printed receipt bearing the first six (6) and last four (4) digits of her debit card account number (for a total of ten (10) digits).

46.     In addition, the receipt provided by Defendant includes the full name of Plaintiff and additional information related to the VIP customers rewards program, such as Plaintiff's customer ID number, all of which expose Plaintiff to an increased risk of identity theft when combined with the ten digits of the debit card account printed on the receipt.

47.     As a direct result of Defendant's printing the first six (6) digits of her debit card account number in addition to the last four (4), Plaintiff Joanne Allen was compelled to take action to safeguard the receipt.

48.     The unlawful printing of Plaintiff Joanne Allen's first six (6) digits of her debit card account number invaded her privacy by disclosing her private financial information to anyone who might come in contact with the receipt.

49.     Defendant's disclosure of the first six (6) digits of Plaintiff Joanne Allen's debit card account number breached her confidence in the proper handling of her sensitive debit card account information.

**D.     Defendant's Misdeeds**

50.     Defendant exercises control of each and every one of the receipt-printing devices in use at retail stores, including, at the DSW locations in Miami, Florida, Columbia, South Carolina, and Pasadena, California referenced herein.

51.     At all times relevant herein, Defendant was acting by and through its subsidiaries, agents, servants and/or employees, each of whom was acting within the course and scope of their agency or employment, and under the direct supervision and control of Defendant.

52.     At all times relevant herein, Defendant's violation of FACTA, as well as that of its subsidiaries, agents, servants and/or employees, was knowing or reckless.

53.     Upon information and belief, Defendant utilizes the same, uniform receipt printing equipment and receipt format at each receipt printing device in use at its retail locations.

54.     Plaintiffs are informed and believe that Defendant implements, oversees, and maintains control over the same uniform debit and credit card payment processing policies, practices, and procedures for the consumer transactions at issue in this case in its retail locations throughout the United States by, without limitation, negotiating, entering into, and acting pursuant to various contracts and agreements with the electronic payment processing company whose technology Defendant uses to process credit or debit card transactions.

55.     It is Defendant's policy and procedure to provide an electronically printed receipt to individuals at the point-of-sale – *i.e*., immediately upon receipt of credit or debit card payments.

56.     Plaintiffs are informed and believe that Defendant and/or its point of sale system maintains records of all payment transactions and stores customers' information, including duplicate hard copies and electronic copies of all payment receipts provided to customers and can easily provide records of all electronically printed receipts provided to its patrons during the time frame relevant to this action.

57.     Notwithstanding its extensive, first-hand knowledge of the requirements of FACTA and the dangers imposed upon consumers through its failure to comply, Defendant has issued, during the time frame relevant to this Complaint, thousands of point-of-sale receipts containing more than the last five (5) digits of credit and debit card numbers.

58.     By shirking its FACTA obligations on such a large scale, Defendant systematically violated Plaintiffs' and the other putative Class members' privacy, breached their confidence, mishandled their personal credit and debit card information, and exposed them to a heightened risk of identity theft. Defendant's conduct alleged herein resulted in

the disclosure of Plaintiffs' and the Class members' private financial information to persons who might find the receipts in the trash or elsewhere, as well as the Defendant's retail employees who handled the receipts.

59. Simply put, by printing numerous transaction receipts in violation of this long-standing and well-known federal statute, Defendant has caused – to paraphrase the words of the Honorable Judge Posner (retired) – "an unjustifiably high risk of harm that [wa]s either known or so obvious that it should [have been] known" to Defendant. *Redman v. RadioShack Corp*., 768 F.3d 622, 627 (7th Cir. 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 836, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)).

## V.    CLASS ALLEGATIONS

60. This action is also brought as a Class Action under Fed. R. Civ. P. 23. Plaintiffs propose the following class, subject to modification by the Court as required:

> *(i) All persons in the United States who, within the two (2) years prior to the filing of the complaint through the date of the Court's order granting class certification, (ii) engaged in one or more transactions using a debit card or credit card at one or more of Designer Brand Inc.'s retail locations in the United States, (iii) at which time Defendant's point-of-sale system was programmed to generate a printed customer receipt displaying more than the last 5 digits of the credit or debit card account number or the expiration date of the credit or debit card used in connection with such transaction(s).*

61. Plaintiffs fall within the class definition and are members of the class. Excluded from the class is Defendant and any entities in which Defendant has a controlling interest, Defendant's agents and employees, Plaintiffs' attorneys and their employees, the Judge to whom this action is assigned and any member of the Judge's staff and immediate family, and claims for personal injury, wrongful death, and/or emotional distress.

14

### A.      Certification Under Rule 23(b)(3) is Proper.

62.      The class is ascertainable. It is defined based on objective criteria. Also, its members generally can be identified based in whole or in part on information within Defendant's possession, custody, or control, as well as from records of the entities that processed the card transactions at issue, and records of the banks that issued the credit/debit cards. *See, e.g.*, *Legg v. Spirit Airlines, Inc*., No. 0:14-cv-61978, ECF No. 146 at p. 14 (S.D. Fla. July 11, 2016) (describing the process of issuing subpoenas to credit card processors and banks to locate class members); *Muransky v. Godiva Chocolatier, Inc*., No. 0:15-cv-60716, ECF No. 74 at p. 12 (S.D. Fla. Sept. 12, 2016) (same); *Guarisma v. Microsoft Corp*., No. 15-cv-24326-CMA, ECF No. 58 ¶¶ 4-6 (S.D. Fla. Apr. 26, 2017) (same); *Flaum v. Doctor's Associates, Inc*., 16-cv-61198-CMA, ECF No. 87 ¶¶ 4-6 (S.D. Fla. June 2, 2017) (same).

63.      Defendant, throughout each of its locations, prints numerous credit and debit card receipts each day. The class period is two years. Therefore, the class is sufficiently numerous such that individual joinder of all members is impractical. The disposition of the claims in a class action will provide substantial benefit to the parties and the Court by avoiding a multiplicity of identical suits.

64.      Although FACTA does not distinguish between business and consumer transactions, all or most purchases at Defendant's retail locations for which a FACTA-violative receipt is provided are paid with a consumer card, rather than a business card, because Defendant is a consumer retail store. To the extent this is an issue, the payments made with the two types of cards are easily discernible: merchants are charged different interchange fees for card transactions that vary based on whether the card is a business card

or a consumer card. There are different interchange categories and codes assigned to each transaction that distinguish whether a card used for a transaction is a business card or a consumer card. Defendant and its merchant bank(s) could easily identify whether a particular transaction involved a business card or a consumer card.

65.     The first six (6) digits of a credit or debit card readily determine whether the corresponding card is a business or consumer card. That is because the first six (6) digits of a credit or debit card number contain what is known as the Bank Identification Number ("BIN") that represents several items of information, including whether the card is a consumer card or commercial (business) card. Finally, Visa, MasterCard, American Express and Discover only allow specific BINs and BIN ranges to identify consumer cards, and specific BINs and BIN ranges to identify commercial (business) cards. Consumer cards and business cards do not share the same BINs or BIN ranges.

66.     There are common questions of law and fact that predominate over any questions affecting only the individual members of the class. The wrongs alleged against Defendant are statutory in nature and common to each and every member of the putative class.

67.     While all Class Members have experienced actual harm as previously explained herein, this suit seeks only statutory damages on behalf of the class and it expressly is not intended to request any recovery for personal injury and claims related thereto. Plaintiffs reserve the right to expand the class definition to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

68.     There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. The questions of law and fact common to the class include the following:

      a.     Whether, within the two (2) years prior to the filing of this Complaint, Defendant and/or its agents employed a point-of-sale payment system programmed to generate credit or debit card transaction receipts containing more than the last five (5) digits of card number numbers or the expiration date of the card;

      b.     Whether Defendant's actions violate FACTA;

      c.     Whether Defendant's violation was knowing or reckless;

      d.     The extent of statutory damages for Defendant's violation; and

69.     As people who patronized Defendant and were provided a printed receipt containing more than the last five (5) digits of their credit or debit card numbers, Plaintiffs assert claims that are typical of the proposed class. Plaintiffs will fairly and adequately represent and protect the interests of the class in that Plaintiffs have no interests antagonistic to any member of the class, and have engaged competent class counsel.

70.     The principal question is whether Defendant violated section 1681c(g) of the FCRA by providing Class Members with electronically printed receipts in violation of the Receipt Provision. The secondary question is whether Defendant's violation was knowing or reckless.

71.     Plaintiffs and the members of the class have all suffered harm as a result of Defendant's unlawful and wrongful conduct. Absent a class action, the class, along with countless future customers of Defendant, will continue to face the potential for irreparable

harm. In addition, these violations of law would be allowed to proceed without remedy and Defendant will continue such illegal conduct. Because of the size of the individual Class Members' claims, few Class Members could afford to seek legal redress for the wrongs complained of herein.

72.     Defendant's defenses are and will be typical of and the same or identical for each of the members of the class and will be based on the same legal and factual theories. There are no unique defenses to any of the Class Members' claims.

73.     A class action is a superior method for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Defendant to comply with federal law. The interest of Class Members in individually controlling the prosecution of separate claims against Defendant is small. The maximum statutory damages in an individual action for a violation of this statute are minimal, and the cost and effort needed to prosecute a claim to recover those minimal damages, makes individual litigation infeasible. Conversely, the claims at issue are well-suited for class treatment given the commonality of claims and relative ease of management.

74.     Defendant has acted on grounds generally applicable to the class, thereby making appropriate final declaratory relief with respect to the class as a whole.

### COUNT I – VIOLATION OF 15 U.S.C. § 1681c(g)

75.     Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

76.     15 U.S.C. §1681c(g) states as follows:

> ***Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.***

77. This section applies to any "device that electronically prints receipts" ("Devices") at point of sale or transaction. 15 U.S.C. §1681c(g)(3).

78. Defendant employs the use of said Devices for point of sale transactions throughout its retail locations.

79. On or before the date on which this complaint was filed, Plaintiffs and members of the class were provided receipt(s) by Defendant that failed to comply with the Receipt Provision.

80. At all times relevant to this action, Defendant was aware, or should have been aware, of both the Receipt Provision as well as the need to comply with said provision.

81. Notwithstanding the three-year period to comply with FACTA and its accompanying provisions, nor the subsequent years since FACTA became effective; and having direct knowledge of the Receipt Provision and FACTA as a whole; Defendant knowingly or recklessly violated and continues to violate the Receipt Provision.

82. By printing more than the last five (5) digits of Plaintiffs' credit or debit card numbers on transaction receipts, Defendant caused Plaintiffs and its other customers numerous injuries as described above.

83. As a result of Defendant's willful violations of the FCRA, Defendant is liable to Plaintiffs and members of the class pursuant to 15 U.S.C. § 1681n for statutory damages, punitive damages, attorney's fees and costs.

*       *       *

**WHEREFORE**, Plaintiffs Lori Whsiman, Joanne Allen, and Sharon Peskett respectfully request that this Court enter judgment in their favor and the class, and against Defendant, as follows:

19

a.      Granting certification of the Class;

b.      Awarding statutory damages;

c.      Awarding punitive damages;

d.      Awarding attorneys' fees, litigation expenses and costs of suit, and;

e.      Awarding such other and further relief as the Court deems proper under the

circumstances.

**JURY DEMAND**

Plaintiffs demand a trial by jury on all issues so triable.

Dated: September 24, 2019

**LORI WHISMAN, JOANNE ALLEN** and
**SHARON PESKETT**, *individually, and on behalf of other similarly situated individuals*

*s/ Scott D. Owens, Esq.*
Scott D. Owens, Esq. (FBN 0597651)
**SCOTT D. OWENS, P.A.**
3800 S. Ocean Dr., Ste. 235
Hollywood, FL 33019
Tel: 954-589-0588
Fax: 954-337-0666
scott@scottdowens.com

Keith J. Keogh, Esq. (FBN 126335)
55 W. Monroe Street
Suite 3390
Chicago, IL 60603
Telephone: 312-726-1092
Facsimile: 312-726-1093
Keith@KeoghLaw.com

BRET L. LUSSKIN, Esq.
20803 Biscayne Blvd., Ste 302
Aventura, Florida 33180
Telephone: (954) 454-5841
Facsimile: (954) 454-5844
blusskin@lusskinlaw.com